UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UFCW LOCAL ONE PENSION FUND,
and its Trustees Frank C. DeRiso, John P.
Barrett, Robert Boehlert, Eric Glathar,
Kristine Wydro, and Raymond Wardynski;
and UFCW LOCAL ONE HEALTH
CARE FUND, and its Trustees Frank C.
DeRiso, John P. Barrett, Robert Boehlert,
Eric Glathar, Kristine Wydro, and
Raymond Wardynski,

                              Plaintiffs,

   -against-                                                   6:12-CV-00682 (LEK/TWD)

NATOLI INDEPENDENT RETAILERS,
INC., doing business as Great American –
Cincinnatus,

                              Defendant.

## MEMORANDUM-DECISION and ORDER

**I.   INTRODUCTION**

Plaintiffs UFCW Local One Pension Fund ("Pension Fund") and UFCW Local One Health Care Fund ("Health Fund"), along with Fund Trustees Frank C. DeRiso, John P. Barrett, Robert Boehlert, Eric Glathar, Kristine Wydro, and Raymond Wardynski (collectively, "Plaintiffs") brought this action against Defendant Natoli Independent Retailers, Inc. doing business as Great American – Cincinnatus ("Defendant") to collect delinquent payments to a multiemployer pension plan pursuant to the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 1 ("Complaint") at 1-2. After Defendant failed to answer, Plaintiffs filed a Request for entry of default on June 11, 2012. Dkt. No. 5. The Clerk of the Court executed a Certificate of default on June 12, 2012. Dkt. No. 6. Presently before the Court is Plaintiffs' Motion for default judgment, filed on July 13, 2012. Dkt.

No. 7 ("Motion").  For the reasons that follow, Plaintiffs' Motion is granted.

## II.     BACKGROUND

Plaintiffs allege in the Complaint that both the Pension Fund and Health Fund are multiemployer benefit plans within the meaning of §§ 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), and are intended to provide retirement and health benefits, respectively, to eligible employees.  Compl. ¶¶ 2, 7.  Plaintiffs further allege that the United Food and Commercial Workers District Local One ("Union") and Defendant were parties to collective bargaining agreements ("agreements") obligating Defendant to make certain contributions to both the Pension Fund and the Health Fund.  Id. ¶¶ 13, 28.

According to Plaintiffs, Defendant failed to make required contributions to the Pension Fund for the months of June 2008 through October 2008, December 2008, March 2009 through September 2009, and December 2009 through March 2010, and owes the Pension fund $7,083.86 in delinquent contributions for this period.  Id. ¶ 17.  Payroll audits conducted for calendar years 2008 and 2009 determined that Defendant owed an additional $992.55 and $266.14, respectively, in delinquent contributions to the Pension Fund.  Id. ¶¶ 19-20.  On April 18, 2011, counsel to the Pension Fund sent a demand letter notifying Defendant that it failed to pay delinquent contributions and interest for the period January 2008 through March 2010.  Id. ¶ 21.

The Board of Trustees of the Pension Fund determined that Defendant effected a "complete withdrawal" pursuant to ERISA § 4203 on April 15, 2010, when Defendant ceased all of its operations covered by the Pension Fund.  Id. ¶ 22.  On June 10, 2011, the Pension Fund notified Defendant that, as a result of that determination, Defendant owed "withdrawal liability" in the amount of $60,022.00 and provided an installment payment schedule with the first payment due

July 1, 2011.  Id. ¶ 23.

Defendant did not submit the first installment payment by the July 1, 2011 due date.  Id. ¶ 24.  On September 29, 2011, the Pension Fund advised Defendant that it was delinquent in its "withdrawal liability" payment and would be in default if it did not pay within sixty days.  Id. ¶ 25.  On December 28, 2011, the Pension Fund advised Defendant that because the Pension Fund had not received payment within sixty days, Defendant was in default.  Id. ¶ 26.

Plaintiffs also allege that Defendant failed to pay required contributions to the Health Fund for the months of December 2009 through March 2010 and owes the Fund $9,654 in delinquent contributions for that period.  Id. ¶ 32.  Further, in May 2010, the Health Fund conducted a payrull audit for calendar year 2009 and determined that Defendant owed $256.00 in delinquent contributions to the Fund.  Id. ¶ 34.  On April 18, 2011, counsel to the Health Fund sent a demand letter notifying Defendant that it owed the Health Fund delinquent contributions and interest for the months of January 2009 through March 2010.  Id. ¶ 35.

According to Plaintiffs, Defendant owes the Pension Fund $60,022.00 for withdrawal liability, $8,341.75 for delinquent contributions, $4,959.63 for interest, and $13,672.35 for liquidated damages.  Mot. at 2.  Plaintiffs claim that Defendant owes the Health Fund a total of $13,759.07, including $9,910.00 for delinquent contributions, $1,867.07 for interest, and $1,982.00 for liquidated damages.  Id.  Plaintiffs also seek a total of $6,791.99 for attorneys' fees and costs.  Id.

**III.   DISCUSSION**

   **A. Standard of Review**

After the clerk has filed an entry of default against a party that has failed to plead or

3

otherwise defend, a court may enter default judgment upon application of the opposing party. FED. R. CIV. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir.1981). However, default judgment is ordinarily justified when a party fails to respond after having received proper notice. See Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). After an entry of default has been entered, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default).

However, a court cannot take allegations in a complaint regarding damages as true. Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 154-155 (2d. Cir. 1999). After establishing liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic, 109 F.3d at 111. To determine the amount of damages in the context of a default judgment, "the court may conduct such hearings or order such references as it deems necessary and proper." FED. R. CIV. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Serv., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir.1991) (a full evidentiary hearing was not necessary where district judge was "inundated with affidavits, evidence, and oral presentations"); Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Northeast King Construction Co., No. 1:06-CV-0806, 2009 WL 1706586, at *1 (N.D.N.Y. June 16, 2009) (Kahn, J.).

**B. Liability**

4

Here, Defendant has failed to appear in this action or to answer Plaintiffs' Complaint, despite having been duly served. See Dkt. Nos. 4, 5, 6. Because Defendant has failed to appear, and because the Clerk has made an entry of default, the Court deems all relevant and well-pleaded factual allegations in Plaintiffs' Complaint as true in determining liability.

In the Complaint, Plaintiffs claim that Defendant has violated 29 U.S.C. § 1145 as to both the Pension Fund and the Health Fund. Compl. ¶¶ 37, 47. 29 U.S.C. § 1145 states that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The Court has reviewed all submissions, and finds that Plaintiffs have sufficiently alleged that Defendant: (1) is an "employer" as defined in 29 U.S.C. § 1002(5); and (2) is obligated to make contributions to two multiemployer plans – the Pension Fund and the Health Fund – under the terms of one or more collective bargaining agreements. Further, Plaintiffs have alleged that Defendant was delinquent in making monthly contributions to both the Pension Fund and the Health Fund in violation of the agreements. Accordingly, taking all of Plaintiffs' allegations as true, the Court finds that Plaintiffs have established each of the elements necessary to state a claim pursuant to 29 U.S.C. § 1145 as to both the Pension Fund and the Health Fund.

Plaintiffs also allege that Defendant ceased all operations covered by the Pension Fund on April 15, 2010. Compl. ¶ 22. Taking this allegation as true, Plaintiffs have sufficiently established that Defendant made a "complete withdrawal" from the Pension Fund as defined by ERISA. See 29 U.S.C. § 1383 ("a complete withdrawal from a multiemployer plan occurs when an employer . . . permanently ceases all covered operations under the plan"). The Pension Fund notified Defendant

of: (1) its withdrawal liability; (2) the installment payment schedule; and (3) the first payment due July 1, 2011, all in compliance with the notification requirements of 29 U.S.C. § 1399(b). Plaintiffs further allege that Defendant failed to make that first payment and failed to cure the delinquency within 60 days of notification. Compl. ¶¶ 24-25. Accordingly, Defendant is in default pursuant to 29 U.S.C. § 1399(c)(5)(A), and the Pension Plan was entitled to "require immediate payment of the outstanding amount of [Defendant's] withdrawal liability." 29 U.S.C. § 1399(c)(5).

**C. Damages**

    1. Pension Fund

*1. Delinquent Contributions and Withdrawal Liability*

Because Defendant is found to have violated § 1145 as to the delinquent contributions, Plaintiffs are entitled to receive as damages the total amount of any unpaid contributions. 29 U.S.C. § 1132(g)(2)(A). Further, Defendant's failure to make withdrawal liability payments when due should also be treated as a contribution delinquency under 29 U.S.C. § 1145. 29 U.S.C. § 1451(b).

Here, Plaintiffs have submitted documentation from a Fund administrator with personal knowledge of the facts of this case. Dkt. No. 7-5 ("Goldberger Declaration"). This documentation states under oath that Defendant owes $7,083.86 for unpaid contributions between June 2008 and March 2010, as well as deficits of $992.55 and $266.14 that were discovered through payroll audits conducted in May 2009 and May 2010. Id. ¶¶ 7-9. The documentation further states that the withdrawal liability, that became due in full upon Defendant's default pursuant to 29 U.S.C. § 1399(c)(5)(A), totaled $60,022.00. Id. ¶ 12. Accordingly, the Court awards Plaintiffs $8,341.75[1] in

---

[1] The amounts listed in the Goldberger Declaration add up to $8,342.55. The Court assumes that there was a clerical error in one of the listed amounts, and therefore awards $8,341.75, the amount requested in both the Motion for default judgment and the proposed order. Mot.; Dkt.

damages for delinquent contributions and $60,022.00 for withdrawal liability.

### 2. Interest on Unpaid Contributions

Plaintiffs are also entitled to receive interest on all delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). Pursuant to the terms of the Fund, Defendant owes interest on any delinquent contributions calculated at a monthly rate of prime plus two percent or eight percent, whichever is greater. Compl. ¶ 40. Plaintiffs have submitted documentation stating that Defendant owes interest, calculated through July 12, 2012, of $4,959.63. Goldberger Decl. ¶ 21. The Court therefore awards Plaintiffs $4,959.63 in interest.

### 3. Liquidated Damages

Under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to the liquidated damages provided for under the plan, so long as they do not exceed twenty percent of the unpaid contributions. Under the terms of the Fund's Trust Agreement and the Delinquency Policy, Plaintiffs are entitled to liquidated damages in the amount of twenty percent of unpaid contributions and withdrawal liability due. Compl. ¶¶ 41, 45. Here, twenty percent of all delinquent contributions and withdrawal liability (($60,022.00 + $8,341.75) * 0.20) equates to $13,672.35. See Goldberger Decl. ¶ 21. Accordingly, the Court awards Plaintiffs liquidated damages in the amount of $13,672.35.

## 2. Health Fund

### 1. Unpaid Contributions

Because Defendant is found to have violated § 1145, Plaintiffs are entitled to receive as damages the total amount of any unpaid contributions. 29 U.S.C. § 1132(g)(2)(A). Here, Plaintiffs have submitted documentation from a Fund administrator with personal knowledge of the facts of

---

No. 7-6 ("Proposed Order").

this case, which states that Defendant owes $9,654.00 for unpaid contributions between December 2009 and March 2010, as well as a deficit of $256.00 that was discovered through a payroll audit conducted in May 2010. Goldberger Decl. ¶¶ 23-24. Accordingly, the Court awards Plaintiffs $9,910.00 in damages for unpaid contributions to the Health Fund.

*2. Interest on Unpaid Contributions*

Plaintiffs are also entitled to receive interest on all delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). Pursuant to the terms of the Fund, Defendant owes interest on any delinquent contributions calculated at a monthly rate of prime plus two percent or eight percent, whichever is greater. Compl. ¶ 40. Plaintiffs have submitted documentation stating that Defendant owes interest of $1,867.07 on unpaid Health Fund contributions calculated through July 12, 2012. Goldberger Decl. ¶ 26. The Court therefore awards Plaintiffs $1,867.07 in interest.

*3. Liquidated Damages*

Under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to the liquidated damages provided for under the plan, so long as they do not exceed twenty percent of the unpaid contributions. Under the terms of the Helath Fund's Trust Agreement and Delinquency Policy, Plaintiffs are entitled to liquidated damages in the amount of twenty percent of unpaid contributions. Compl. ¶ 51. Here, twenty percent of all unpaid Health Fund contributions amounts to $1,982.00. See Goldberger Decl. ¶ 26. Accordingly, the Court awards Plaintiffs liquidated damages in the amount of $1,982.00.

3. Attorneys' Fees and Costs

Under 29 U.S.C. § 1132(g)(2)(D), Plaintiffs are entitled to recoup reasonable attorneys' fees and costs. Further, the terms of the Funds' Trust Agreement and Delinquency Policy allow for

8

reasonable attorneys' fees and costs incurred in collecting payment of unpaid contributions. Compl. ¶¶ 41, 45, 51. Accordingly, Plaintiffs are entitled to an award of reasonable costs and attorneys' fees.

Courts in the Second Circuit employ a "presumptively reasonable fee" standard to determine the amount to award as attorneys' fees. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In order to determine what is a presumptively reasonable fee,[2] the court assesses "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a reasonable number of hours expended by counsel. McDaniel v. County of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010).

Plaintiffs seek a total of $5,508.00 in attorneys' fees charged by the law firm Slevin & Hart, P.C. and $790.00 in attorneys' fees charged by the law firm Getnick Livingston Atkinson & Priore, LLP. Dkt. No. 7-1 ¶¶ 21-22, 27-28. In support of this request, Plaintiffs have submitted detailed billing records, as well as declarations from the attorneys outlining their experience and credentials. Dkt. Nos. 7-1, 7-2, 7-3, 7-4.

The Court has reviewed the documentation submitted by Plaintiffs, and finds that all time billed is supported by contemporaneous time records that show – for each attorney – the date or dates worked, the hours expended, and the nature of the tasks completed. Id. The Court has undertaken an independent review of the record and considered all relevant factors, and finds that the time billed by Plaintiffs' attorneys on this matter is reasonable. Further, the hourly rates

---

[2] Even though Plaintiffs' Motion is unopposed, a reviewing court should still examine the reasonableness of the costs and fees requested. See, e.g., Worldcom Technologies, Inc. v. Sequel Communications, Inc., No. 00 CIV. 1598, 2001 WL 1346178 (S.D.N.Y. Nov. 1, 2001).

requested by each attorney are within the range considered to be reasonable in this district, and are justified by the experience and expertise of the attorneys who worked on this matter. Accordingly, the Court grants attorneys' fees in the amount of $6,298.00.

Plaintiffs also seek costs in the amount of $56.69 expended by Slevin & Hart, P.C. and $473.30 expended by Getnick Livingston Atkinson & Priore, LLP. After reviewing the record, the Court finds that these amounts are warranted and therefore awards Plaintiffs $493.99 in costs and disbursements.

### IV.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Default Judgment (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiff UFCW Local One Pension Fund and against Defendant in the sum of $86,995.72;[3] and it is further

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiff UFCW Local One Health Fund and against Defendant in the sum of $13,759.07;[4] and it is further

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendant for attorneys' fees and costs in the amount of $6,791.99; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

---

[3] This amount is comprised of $60,022.00 for withdrawal liability, $8,341.75 for unpaid contributions, $4,959.63 in interest, and $13,672.35 in liquidated damages. The Court presumes that the statement in Plaintiffs' Motion summing the above numbers to $89,032.42 was a clerical error. Mot. at 2.

[4] This amount is comprised of $9,910.00 in unpaid contributions, $1,867.07 in interest, and $1,982.00 in liquidated damages.

**IT IS SO ORDERED**.

DATED: October 09, 2012
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge